UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

EDWARD LEE,

          Plaintiff,

v.                                                           Case No. 5:08-cv-161-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

          Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits. (Doc. 1.) The Commissioner has answered (Doc. 9) and both parties have filed briefs outlining their respective positions. (Docs. 14 & 15.) For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

In July 2002, Plaintiff filed applications for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI) claiming a disability onset date of December 2, 2001. (R. 24, 81-83.) Plaintiff's application was denied initially, and upon reconsideration. (R. 63-72.) On January 29, 2004, ALJ James Knapp conducted Plaintiff's administrative hearing. (R. 883-904.) On June 10, 2004, ALJ Knapp issued an unfavorable decision. (R. 43-60.) On August 9, 2004, review was denied by the Appeals Council. (R. 39-41.) Plaintiff did not seek judicial review and, thus, the June 10, 2004 decision by ALJ Knapp is final and binding.

In July 2004, Plaintiff filed his current applications for a period of disability, disability insurance benefits, and supplemental security income, alleging a disability onset date of June 11, 2004. (R. 24, 503-05.) Plaintiff's application was denied initially, and upon reconsideration. (R. 481-87.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an ALJ. (R. 488.) On December 5, 2006, ALJ Robert D. Marcinkowski conducted Plaintiff's administrative hearing. (R. 905-31.) On January 10, 2007, the ALJ issued a decision partially favorable to Plaintiff. (R. 20-32.) The Appeals Council denied Plaintiff's request for review. (R. 8-11.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the

---

[1] See 42 U.S.C. § 405(g).

[2] See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which

---

[3] See Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] See Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] See Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] See 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] See 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] See 20 C.F.R. § 404.1520(b).

significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

---

[10] See 20 C.F.R. § 404.1520(c).

[11] See 20 C.F.R. § 404.1520(d).

[12] See 20 C.F.R. § 404.1520(e).

[13] See 20 C.F.R. § 404.1520(f).

[14] See Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] See Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] See Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. **SUMMARY OF THE RECORD EVIDENCE**

Plaintiff was born on May 18, 1856 and was fifty (50) years old when the ALJ issued his decision. (R. 909.) Plaintiff completed the eleventh grade. (R. 909.) He has worked as a service manager for a tire company, an automobile mechanic, and as a

---

[17] See Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] See Walker at 1003.

[19] See Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

water company truck driver and delivery person. (R. 910-12.) Plaintiff contends that he has been unable to work since June 11, 2004 due to his right knee and lower back. (R. 915.)

The majority of the medical evidence in the record pre-dates the alleged disability onset date – June 11, 2004 – and was considered by ALJ Knapp in the prior decision. The Court will not discuss those medical records in detail here, but will discuss them as necessary in the "Discussion" section below.

Plaintiff has a history of chronic knee pain and low back pain and has been prescribed pain medication, cortisone shots, a knee brace and a cane. (R. 641- 54, 753, 758, 832-50, 859, 861.) On August 19, 2004, Plaintiff failed a drug screen and was advised that he would not receive controlled medications until after he had seen an addiction specialist. (R. 642.) Plaintiff has a history of coronary artery disease and hypertension and he has had several heart catheterizations and has been prescribed heart medications. (R. 581-637, 832-58, 862-72.) In January 2005, Plaintiff was admitted to Florida Hospital Waterman with recurrent chest pains (R. 777-86) and admitted again in April 2005 for abdominal pain and chest pain. (R. 797-804.)

On November 30, 2004, Plaintiff was seen by Amita Oza, M.D., for a consultative evaluation. (R. 765-67.) Dr. Oza's impression was that Plaintiff has a history of smoking with evidence of COPD, a family history of coronary artery disease, hyperlipidemia, chest pain suggestive of angina, severe arthritis of his right knee with instability, low back pain with possible right-sided S1 radiculopathy, hallux valgus deformity and depression secondary to the above problems; and that work related activities would be accordingly affected.

On March 18, 2005, a physical residual function capacity ("RFC") assessment was performed by a non-examining state agency physician. (R. 787-94.) Based on a review of the medical records, the physician concluded that Plaintiff could frequently lift/carry up to 10 pounds, occasionally lift/carry up to 20 pounds, sit for about six hours of an 8-hour workday, push and pull without limitation, and occasionally climb, balance, stoop, kneel, crouch and crawl. On July 21, 2005, a second physical RFC assessment was performed by another non-examining state agency physician, who found that Plaintiff could frequently lift/carry up to 10 pounds, occasionally lift/carry up to 20 pounds, sit for about six hours of an 8-hour workday, push and pull without limitation, and occasionally climb, balance, stoop, kneel, crouch and crawl. (R. 805-12.) It was further recommended that Plaintiff avoid concentrated exposure to extreme cold, extreme heat and hazards.

On July 22, 2005, a non-examining state agency psychologist completed a Psychiatric Review Technique and found that Plaintiff's affective and anxiety-related disorders were not severe and resulted in only mild functional limitations. (R. 813-26)

At the hearing on December 5, 2006, Plaintiff testified that he has been unable to work since June 11, 2004 due to his right knee and lower back. (R. 915.) Plaintiff testified that his back is the biggest problem that prevents him from working. (R. 928.) Plaintiff reported constant back pain that radiates into his left shoulder. (R. 917-18.) He stated that due to his back pain he can only sit for five or ten minutes and then he must stand up and move around. (R. 923.) He testified that he has had three surgeries on his right knee and that he has been prescribed a cane and a brace. (R. 915.) Plaintiff reported constant knee pain that is relieved by laying down or sitting in a recliner. (R.

7

916.) He spends four or five hours per day in his recliner and another couple of hours laying down.. (R. 916, 924.) Plaintiff has been prescribed Ultram for the pain, but he testified that it helped very little. (R. 917, 919.) Plaintiff also testified that he has daily chest pains, has had three heart catheterizations and takes several daily heart medications. (R. 920-21.) Plaintiff reported getting confused and having trouble with his long-term memory. (R. 919.) Plaintiff testified that he has been taking Effexor XR for about five years for depression (R. 919), Nexium for his stomach, Zetia for cholesterol and was recently prescribed Flexeril, a muscle relaxant. (R. 921.) Plaintiff testified that he can grocery shop, cook and bathe and dress himself. (R. 926.)

The ALJ determined that Plaintiff suffers from a back disorder, right knee disorder, and coronary artery disease. (R. 26.) The ALJ determined that, while these impairments were severe, Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (R. 27.)

The ALJ then determined that Plaintiff retained the physical RFC to stand and walk two hours in an eight-hour workday, sit six hours in an eight-hour workday and lift ten pounds. (R. 27.) While concluding that Plaintiff was unable to perform any past relevant work, the ALJ found that prior to May 18, 2006, there was a significant number of jobs in the national economy that Plaintiff could have performed. Applying Rule 201.19 of the Medical-Vocational Guidelines (the "grids")[22] as a "framework" the ALJ found that Plaintiff was not disabled prior to May 18, 2006. (R. 30.) However, the ALJ

---

[22] 20 CFR Pt. 404, Subpt. P. App.2 Rule 204.00.

8

found that there was not a significant number of jobs in the national economy as of May 18, 2006 – when Plaintiff attained 50 years of age and his age category changed to an "individual closely approaching advanced age." (R. 29.) The ALJ applied Rule 201.10 of the "grids" as a "framework" and found that Plaintiff was disabled as of May 18, 2006. (R. 30.) The ALJ did not consult a vocational expert.

## IV. DISCUSSION

Plaintiff raises three arguments on appeal – (i) The ALJ did not apply the legal standard set forth in Listing 12.05C of the listings; (ii) The ALJ's use of the grids to find Plaintiff not disabled prior to his fiftieth birthday was not appropriate; and (iii) The ALJ did not properly consider the opinions of Plaintiff's treating physician and state agency consultants. For the reasons discussed below, none of these arguments have merit.

### A. The ALJ's finding that Plaintiff's impairments did not meet or equal a listing was supported by substantial record evidence

First, Plaintiff contends that the ALJ failed to apply the legal standard set forth in listing 12.05C. The listing of impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from gainful activity. By meeting a listed impairment or otherwise establishing an equivalence, a Plaintiff is presumptively determined to be disabled regardless of his age, education, or work experience. Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment.[23] However, at this stage of the

---

[23] See Edwards v. Heckler, 736 F.2d 625, 628 (11th Cir. 1984).

evaluation process, the burden is on the plaintiff to prove that he or she is disabled.[24] In this Circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing.[25] Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings.[26]

Plaintiff bore the burden of proving that he met or equaled a listed impairment, and, in order to do so, Plaintiff had to meet all of the requirements of the listed impairment. At issue here is Section 12.05C of the listing of impairments, which describes mental retardation. Section 12.05C provides:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

The introductory language to the section on Mental Disorders explains that:

The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the

---

[24] See Bell v. Bowen, 796 F.2d 1350, 1352 (11th Cir. 1986); Wilkinson v. Bowen, 847 F.2d 660, 663 (11th Cir. 1987).

[25] See Bell, 796 F.2d at 1353.

[26] See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

10

> diagnostic description in the introductory paragraph and any one of the four sets
> of criteria, we will find that your impairment meets the listing.

Plaintiff argues that he meets Listing 12.05 and that the ALJ erred by not even considering it. Although the ALJ did not explicitly discuss why Plaintiff did not meet Listing 12.05, substantial record evidence supports that Plaintiff's condition did not actually or functionally meet Listing 12.05. As discussed above, in order to meet his burden, Plaintiff had to show that his impairments met or equaled all of the criteria in the diagnostic description of mental retardation found in the introductory paragraph of Listing 12.05, together with the criteria in subsection (C).

In support of this argument, Plaintiff relies solely upon an October 17, 2002 consultative report by Giovanni M. Bonds, Ph.D. in which he reported that Plaintiff's full-scale IQ score was 70. (R. 272.) This report was dated more than a year and a half before the current alleged onset date of June 11, 2004 and was considered in the prior decision by ALJ Knapp. Because Plaintiff relies solely upon Dr. Bonds' report and offers no subsequent medical evidence to support his claim that he meets Listing 12.05, Plaintiff is requesting the ALJ to make a determination based upon the exact same facts evaluated by the previous ALJ (ALJ Knapp) as part of Plaintiff's first application, which was denied. This is improper. ALJ Knapp's decision, which Plaintiff did not appeal, was final and binding and, thus, his determination that Plaintiff's impairments did not meet or equal a listing has a preclusive effect. The ALJ on the current application (Robert D. Marcinkowski ) cannot reevaluate the exact same medical evidence and reach a different conclusion without violating the final and binding effect of the first decision.

Moreover, even assuming that Dr. Bonds' report was sufficient to meet the requirements of subsection (C), Plaintiff offered no evidence to show that he meets the diagnostic description in the introductory paragraph. Dr. Bonds did not diagnose Plaintiff with mental retardation or "significantly subaverage general intellectual functioning", nor did he identify any deficits in adaptive functioning. In addition, Plaintiff has offered no evidence suggesting that the onset of his alleged mental retardation was before the age of 22, a requirement of the listing. Accordingly, Dr. Bonds' report, by itself, is insufficient to establish that Plaintiff's impairments meet or equal Listing 12.05.

Lastly, Plaintiff contends that the ALJ should have determined whether it was appropriate to reopen ALJ Knapp's prior decision. However, based on the Court's conclusion that Dr. Bond's report does not establish that Plaintiff meets Listing 12.05 – and because Plaintiff has pointed to no other evidence showing that he meets Listing 12.05 -- reopening the prior decision would serve no purpose. Moreover, Plaintiff did not request reopening and the ALJ had no reason to consider reopening the prior application because Plaintiff did not allege that he was disabled until June 11, 2004 -- the day after ALJ Knapp issued his decision. Lastly, and most notably, even if Plaintiff alleged he was disabled prior to June 10, 2004, and requested reopening of the prior application, and the ALJ denied his request for reopening, this Court would not have subject matter jurisdiction to review an ALJ's decision not to reopen a prior administrative decision, absent a colorable constitutional challenge – which Plaintiff has not alleged.[27]

---

[27] Califano v. Sanders, 430 U.S. 99, 107-09 (1977.)

**B.     The ALJ's reliance on the grids was appropriate**

Because the ALJ found that Plaintiff could not return to his past relevant work, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists in the national economy.[28] The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is satisfied in most cases through the use of vocational expert testimony.[29] However, when the claimant can clearly do unlimited types of work at a given residual functional level it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.[30]

In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.[31] This burden may sometimes be met through exclusive reliance on the "grids."[32]

Plaintiff argues that the ALJ erred by applying the grids for several reasons. First, Plaintiff contends that the ALJ did not consider the side effects of Plaintiff's medications and failed to elicit testimony and make findings regarding the effects of the prescribed medications on Plaintiff's ability to work. However, the ALJ noted that there were no reported side effects from medications. (R. 29.) Plaintiff does not cite any

---

[28] See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

[29] See id.

[30] See id.

[31] See Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).

[32] Foote, 67 F.3d at 1558.

13

medical evidence that he complained of side effects to his doctors and, instead, only cites his own statements included in the documents Plaintiff submitted to the Commissioner with his various applications. Indeed, the medical records do not disclose any concerns about side effects by the doctors who examined and treated him. (R. 643, 646, 652.) Additionally, neither Plaintiff nor his attorney raised the issue of side effects at the hearing. (R. 907-30.) Accordingly, because the ALJ's conclusion that there were no reported side effects from medication was supported by substantial evidence, there was no need for the ALJ to elicit testimony and make findings regarding the side effects of Plaintiff's medications and what impact, if any, side effects from medications would have on his ability to work.

Second, Plaintiff argues that the ALJ failed to consider Plaintiff's borderline intellectual ability, borderline working memory, and extremely low general delayed memory. Once again, Plaintiff relies solely upon Dr. Bonds' report from 2002 (R. 273) and cites no subsequent evidence from the relevant time period showing that he had any mental limitations during the period for which he seeks benefits. Moreover, even if Plaintiff's mental condition could have been considered severe, Plaintiff failed to show (or even explain) how his mental condition would have prevented him from performing the basic demands of unskilled work.

Plaintiff next argues that the ALJ failed to consider the combined effect of all of his impairments. However, the ALJ properly considered Plaintiff's impairments in combination as required by Eleventh Circuit law. Where a claimant alleges more than one impairment, the Commissioner has a duty to consider the cumulative effects of the

14

impairments in making the determination as to whether the claimant is disabled.[33]  Here, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" in the regulations and noted that in making his RFC finding he "considered all symptoms." (R. 26-27.)  These statements by the ALJ are more than sufficient to demonstrate that he properly considered Plaintiff's impairments in combination.[34]

Finally, Plaintiff contends that the ALJ mechanically applied the age criteria in finding that he was not disabled prior to May 18, 2006 – the date he turned fifty years of age.  Relying upon Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1994) Plaintiff suggests that the ALJ should have considered him a person "closely approaching advanced age" for some period of time before he turned age fifty. In Reeves, the Eleventh Circuit held that:

> before the Secretary may use the age factor as applied in the grids as evidence of the claimant's ability to adapt to a new work environment, the claimant must be afforded an opportunity to proffer substantial credible evidence that his ability to adapt is less than the level established under the grids for persons of his age capable of his residual functional capacity.[35]

In the instant case, neither Plaintiff nor Plaintiff's counsel suggested at the hearing that Plaintiff's ability to adapt was less than the level presumed under the grids. Moreover, Plaintiff failed to offer credible evidence that his ability to adapt was less

---

[33] Jones v. Dep't of Health & Hum. Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (citing Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985), *aff'd on other grounds*, Sullivan v. Hudson, 490 U.S. 877 (1989)).

[34] Id.; Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

[35] Hutchison v. Bowen, 787 F.2d 1461, 1465 (11th Cir. 1986.)

15

than the level established under the grids for persons of his age and capable of his RFC. Other than noting that his intellectual limitations, memory limitations, postural limitations and environmental limitations "would make his ability to adapt to other work less than other people his age who do not have the same limitations," Plaintiff has failed to show why he should have been placed in the older age category at some point before May 18, 2006. (Doc. 14, page 15.) Indeed, as discussed above, there is no medical evidence from the relevant time period showing that Plaintiff had any mental limitations or memory limitations. Likewise, in determining that Plaintiff was not disabled prior to May 18, 2006, the ALJ specifically considered Plaintiff's postural and environmental limitations and properly concluded – based upon Social Security Rulings 83-14 and 85-15 -- that those limitations did not significantly erode the sedentary base. Accordingly, there was no error by the ALJ in relying exclusively upon the grids.

**C.  The ALJ properly considered the opinions of Dr. Buffington and the state agency doctors**

Plaintiff argues that the ALJ failed to properly consider the opinion of Stephen N. Buffington, D.O., Plaintiff's treating orthopaedic physician. In an October 18, 2002 letter addressed "To Whom It May Concern," Dr. Buffington wrote that "[b]ased on [Plaintiff's] severely arthritic knee, I would state he qualifies for total and permanent disability." (R. 300.)

In the prior decision, ALJ Knapp specifically considered Dr. Buffington's opinion and found that it was not entitled to controlling weight because it was not supported by medical evidence and the record as a whole. Plaintiff did not appeal the prior decision and, thus, ALJ Knapp's decision became final and binding. Nevertheless, Plaintiff

argues that ALJ Marcinowski should have reconsidered the prior ALJ's findings. However, neither Plaintiff nor his counsel, disputed the prior ALJ's findings nor did they mention Dr. Buffington's opinions in the proceedings before ALJ Marcinowski. Accordingly, there was no reason for ALJ Marcinowski to revisit Dr. Buffington's opinion, especially because Dr. Buffington's opinion was from October 2002 – more than one and half years before Plaintiff's alleged disability onset date. Moreover, even if the ALJ had considered Dr. Buffington's opinion, it would not have been entitled to controlling weight because the issue of whether Plaintiff is disabled is an issue reserved for the Commissioner.

Likewise, Plaintiff's related argument – i.e., that the ALJ erred because he gave more weight to the state agency doctors than Dr. Buffington – must be rejected. As discussed above, the ALJ was not required to revisit Dr. Buffington's October 2002 opinion. Moreover, the ALJ properly considered the opinions of the state agency doctors, who completed their assessments during the period for which Plaintiff seeks benefits. Based on his review of the medical evidence, the ALJ "partially agree[d]" with the state agency doctors that Plaintiff could sit six hours in an eight-hour workday with postural and environmental limitations. The ALJ, however, disagreed with the state agency doctors regarding Plaintiff's ability to stand and walk and found that due to his knee instability, Plaintiff would be limited to standing and walking two hours in an eight-hour workday.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **AFFIRMED**. The Clerk is directed to enter final judgment consistent with this Order and to close the file.

**IT IS SO ORDERED**.

**DONE AND ORDERED** in Ocala, Florida, on this 29th day of May, 2009.

*GARY R. JONES*
United States Magistrate Judge

Copies to:
All Counsel